UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
CONEY ISLAND LAND CO., LLC, : 15-CV-4746 (ARR) (PK)
:
Plaintiff, : NOT FOR ELECTRONIC
: OR PRINT PUBLICATION
-against- :
: OPINION & ORDER
:
DOMINO'S PIZZA LLC, :
:
Defendant. :
------------------------------------------------------------------- :
X

ROSS, United States District Judge:

Plaintiff, Coney Island Land Co., LLC ("Coney Island"), brings a breach of contract suit against defendant, Domino's Pizza LLC ("Domino's"), premised on Domino's failure to reimburse Coney Island for real estate taxes and other charges allegedly due under the parties' lease agreement. Domino's contends that, because plaintiff lost ownership of the subject property during bankruptcy, it may no longer collect under the lease. Before the court are the parties' cross-motions for summary judgment. Two independent grounds support summary judgment in favor of defendant: (1) plaintiff did not disclose its claim during bankruptcy; and (2) plaintiff was not damaged by defendant's breach. Therefore, as provided in the following opinion, plaintiff's motion is denied, and defendant's motion is granted.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. Plaintiff held title to a building located at 900-902 Coney Island Avenue, Brooklyn, New York (the "Property") from December 4, 1995, until August 8, 2013. Pl.'s Stmts. Material Facts Not Dispute ("Pl.'s 56.1"),

ECF No. 38-4, ¶ 3; Def.'s Rule 56.1(b) Stmt. Opp'n Pl.'s Mot. Summ. J. ("Def.'s Resp. 56.1"), ECF No. 31, ¶ 3.

### A. Lease and Lease Modification

Coney Island and Domino's signed a lease agreement dated August 3, 2000, whereby Domino's leased one of the ground floor commercial units at the Property. Pl.'s 56.1 ¶ 4; Def.'s Resp. 56.1 ¶ 4; Lease Agreement ("Lease"), Aff. in Supp. ("Hirsch Aff.") Ex. C, ECF No. 38-7. The lease ran for seven years. Pl.'s 56.1 ¶ 5; Def.'s Resp. 56.1 ¶ 5; Lease Art. 3.

The lease contained provisions requiring Domino's to pay real property taxes on the premises if Coney Island provided "true copies of tax assessments or tax bills," "no later than one year after said taxes are incurred." Lease Art. 16; see also Def.'s Rule 56.1 Stmt. Material Facts ("Def.'s 56.1"), ECF No. 26, ¶ 2; Pl.'s Resp. Def.'s Rule 56.1 Stmt. ("Pl.'s Resp. 56.1"), ECF No. 33-2, ¶ 2. New York law governs the lease. Lease Art. 36 ("This Lease shall be governed by, and construed in accordance with[,] the laws of the state in which the premises are located.").

The parties subsequently extended the lease through May 31, 2013. Pl.'s 56.1 ¶ 6; Def.'s Resp. 56.1 ¶ 6; Lease Extension & Modification Agreement ("Lease Modification"), Hirsch Aff. Ex. D, ECF No. 38-8. This new agreement provided, in part, that Domino's would pay water and sewer charges, and fines on Environmental Control Board ("ECB") violations issued "upon presentment [by Coney Island] of bona fide evidence of these charges." Lease Modification; see also Def.'s 56.1 ¶ 3; Pl.'s Resp. 56.1 ¶ 2. The lease modification also reiterated defendant's obligation to pay real estate taxes. Lease Modification. Finally, the modification provided that

"[e]xcept as set forth herein, all other terms and conditions of the Lease Agreement remain the same and unchanged and in full force and effect." Id.

### B. Plaintiff's Bankruptcy

During the lease term, Coney Island began construction on a multi-story building on part of the Property not occupied by Domino's. Def.'s 56.1 ¶ 4; Pl.'s Resp. 56.1 ¶ 4. In January 2008, plaintiff defaulted on its construction loan. Def.'s 56.1 ¶ 5; Pl.'s Resp. 56.1 ¶ 5. In late March 2008, plaintiff's lender Madison Realty Capital L.P. ("Madison") brought a foreclosure action against the Property. Pl.'s 56.1 ¶ 11; Def.'s Resp. 56.1 ¶ 11. In October 2012, Madison was granted a judgment of foreclosure. Def.'s 56.1 ¶ 6; Pl.'s Resp. 56.1 ¶ 6; Referee's Deed in Foreclosure, Hirsch Aff. Ex. B, ECF No. 38-6.

On December 19, 2012, before the Property was sold, plaintiff filed a Chapter 11 bankruptcy petition. Pl.'s 56.1 ¶ 12; Def.'s Resp. 56.1 ¶ 12; Def.'s 56.1 ¶ 7; Pl.'s Resp. 56.1 ¶ 7. In its bankruptcy filing, Coney Island did not list its claims against Domino's. See generally Decl. Supp. Mot. ("Kendric Decl.") Ex. M, ECF No. 39-14. For example, on "Schedule B – Personal Property," under the heading "Accounts receivable," plaintiff listed only "Rent due and owing from Domino's Pizza for approximately three years, if not collected by Madison Capital Realty." Id. at 4. On the same schedule, under the heading "Other liquidated debts owed to debtor," plaintiff listed: (1) "Claim for damages against Madison [Realty] Capital"; and (2) "Claims against ATA Construction Corp. for damages and pre-paid construction costs." Id. Plaintiff did not list the amounts it now claims are owed from Domino's for real estate taxes, water and sewage charges, or ECB fines. See id. Coney Island instead sought relief in bankruptcy from its obligation to pay the city real estate taxes and water and sewer charges owed

3

for the Property. Specifically, on "Schedule E – Creditors Holding Unsecured Priority Claims," Coney Island listed debt for "Possible RE Taxes [and] Water/Sewer Charges" owed to "NYC Dept [o]f Finance." Id. at 9.[1]

As part of the bankruptcy proceedings, plaintiff and Madison entered into a stipulated agreement, which the court ordered on May 8, 2013. Pl.'s 56.1 ¶ 13; Def.'s Resp. 56.1 ¶ 13; Stip., Agreement & Order ("Stipulated Order"), Hirsch Aff. Ex. E, ECF No. 38-9. In this order, Coney Island consented to the bankruptcy court lifting the automatic stay protecting its assets[2] so that Madison could take ownership of the property pursuant to the judgment of foreclosure. Stipulated Order ¶ 4. In exchange, Madison agreed to waive its deficiency claim against Coney Island and release plaintiff from all liability related to the Property. Id. ¶ 9; see also id. ¶ 5. Madison also agreed to pay certain fees and expenses associated with the bankruptcy. Id. ¶¶ 7, 10.

The Stipulated Order directed that "Madison shall be permitted to continue to collect any and all outstanding rents and future rents due from Domino[']s and Domino[']s is hereby directed to pay all rents which it is currently holding under such tenancy . . . to Madison on account of Domino[']s tenancy on the Property." Id. ¶ 11. It further provided as follows:

> [N]othing in this Stipulation . . . shall affect the Debtor's rights, claims and causes of action known or unknown, vested or unvested, against all third and/or unrelated parties (excluding Madison), including but not limited to, any and all recovery,

---

[1] Coney Island may have also sought relief from ECB fines. On "Schedule E – Creditors Holding Unsecured Priority Claims," Coney Island lists an unspecified debt owed to "NYC Dept [o]f Buildings." Id. at 9. Nothing in the record clarifies whether this entry relates to ECB fees.

[2] The automatic stay provision of the Bankruptcy Code "stays the commencement or continuation of virtually all proceedings against a debtor, including enforcement of judgments, that were or could have been commenced before the debtor filed for bankruptcy." S.E.C. v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (citing 11 U.S.C. § 362(a)).

refund, rebate, reduction or reimbursement, against third and/or unrelated parties, including but not limited to, any and all claims/causes of action, vested or unvested, related to real estate taxes and/or tax certiorari challenges of the real estate tax assessments of the Property, which shall remain property of the Debtor, subject to paragraph 14 below.

Id. ¶ 13. Paragraph 14 gave the following limitation: "any and all claims/causes of action, vested or unvested, related to real estate taxes, and/or tax certiorari challenges of the real estate tax assessments of the Property for the 2012 and 2013 tax years only, shall belong to Madison." Id. ¶ 14.

Plaintiff exited bankruptcy on August 22, 2014. Order Dismissing Chapter 11 Case, Kendric Decl. Ex. N, ECF No. 39-15.

### C. Demands for Payment Under the Lease

Between 2009 and 2013, Coney Island sent letters to demand payment under the provisions of the lease and lease modification relating to real estate taxes, sewer and water charges and ECB violations. See Letters, Hirsch Aff. Ex. G, ECF No. 30-10. The letters, dated July 1, 2009, July 1, 2010, July 1, 2011, and July 2, 2012, each stated:

> This is a courtesy notice that pursuant to the lease agreement . . . the real estate taxes, water & sewer and other obligations to the City of New York that are the obligation of Domino's Pizza are due. Please review the City of New York's records and let us know if you have any questions about the amounts due.

Id. at 2-5. None contained attachments. See id.[3]

---

[3] Domino's also provided an identical letter dated July 1, 2013. Letter, Decl. Opp'n Pl.'s Mot., Ex. P, ECF No. 31-3. In its opposition to plaintiff's motion, Domino's questions the legitimacy of these five letters, noting that two of them (dated July 1, 2010, and July 1, 2011) were never provided during discovery and three (dated July 1, 2009, July 2, 2012, and July 1, 2013) were produced by plaintiff but "do not appear in Domino's records." Mem. Law Opp'n Pl.'s Mot. Summ. J., ECF No. 31-6, at 3. Plaintiff did not "provide[] any documentation confirming transmittal or receipt for" these letters. Id. Because I grant Domino's motion for summary judgment, and therefore draw all reasonable inferences in favor of plaintiff, I assume each of these letters was sent to Domino's on the date indicated by the letter.

A June 19, 2013 letter demanded payment for "$140,191.32 in real estate taxes for the period commencing July 2009 through December 2011, and for $81,900 in ECB outstanding charges, in addition to all other sums due." Id. at 6-7. This letter attached what Coney Island described as "a printout of the City of New York Account History" and "a detailed report of the ECB charges." Id. at 7. The account history printout, apparently from a City of New York website, shows that the real estate taxes were paid in full. Id. at 8-13. The ECB charges are evidenced by a table, apparently prepared by a third party record locator, purporting to detail ECB violations against, among others, Coney Island Land Company. Id. at 14-34.

Finally, Coney Island sent a letter dated December 30, 2014, requesting $299,874.23 in real estate taxes for July 2009 through May 28, 2014, and $81,900 in ECB charges. Id. at 35-36. While the letter states that "New York City Department Finance billings showing the real estate taxes" and "a partial detailed report of the ECB charges" are attached, these attachments do not appear in the record. Id.

In response to these demands, Domino's paid plaintiff at least once, via a check dated March 25, 2009. Pls.' 56.1 ¶ 16; Def.'s Resp. 56.1 ¶ 16. This check covered real estate taxes from July 2006 through June 30, 2009. Id. Domino's has never paid plaintiff for water and sewer or ECB violation charges. Pl.'s 56.1 ¶ 17; Def.'s Resp. 56.1 ¶ 17.

Coney Island has not paid any of the taxes or charges for which it seeks payment from Domino's. Def.'s 56.1 ¶ 14; Pl.'s Resp. 56.1 ¶ 14. At his deposition, plaintiff's corporate representative confirmed this:

> Q. Mr. Hirsch, is it correct to say that Coney Island Land Company did not pay real estate taxes on the property for the period January 1, 2008 to present?
> A. To the best of my knowledge, that is the case. . . .

6

> Q. Is it correct to say that Coney Island Land Company did not pay water and sewer charges on the property for the period January 1, 2008, to present?
> A. To the best of my knowledge, that is correct. . . .
>
> Q. Is it correct to say, Mr. Hirsch, that Coney Island Land Company did not pay fines for environmental control board violations on the property for the period January 1, 2008 to present?
> A. To the best of my knowledge, that is correct.

Dep. of Ben Hirsh, Kendric Decl. Ex. D, ECF No. 39-5, at 8:22-9:3, 9:21-10:2, 12:6-11. In various filings, plaintiff advises that Madison paid these taxes, fees and charges. See, e.g., Pl.'s Resp. 56.l ¶ 14. Nor is plaintiff presently responsible for payment of these amounts. See Pl.'s Resp. Def.'s First Set of Interrogs. Kendric Decl., Ex. K, ECF No. 39-12, at 1.

### D. This Action

This breach of contract action was removed to federal court on August 13, 2015. Notice of Removal, ECF No. 1. Plaintiff seeks (1) real property taxes for the period July 1, 2009 to June 30, 2012, in the amount of $162,707.04; (2) water and sewer charges in an amount not less than $50,000; and (3) ECB fines, in the amount of $81,900. Compl., ECF No. 9, ¶¶ 9, 11, 13. Plaintiff has apparently now limited its claim to charges incurred in the years 2009-2011, see Letter, Oct. 26, 2016, ECF No. 24, at 3, and is no longer seeking water and sewer charges, see Hirsch Aff., ECF No. 38-1, ¶ 21.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether a genuine issue exists that must be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

(1968)). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Anderson, 477 U.S. at 250).

In assessing whether summary judgment is appropriate, I consider "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., 336 F.3d 94, 99 (2d Cir. 2003)). The moving party carries the burden of proving that no genuine dispute exists respecting any material fact, and it "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party has met this burden, to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). A genuine issue is presented if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." Husser v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 253, 262 (E.D.N.Y. 2015). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing, e.g., Anderson, 477 U.S. at 255; Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

## DISCUSSION

### A. Plaintiff Lacks Capacity to Sue

"It has long been the rule that 'upon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires, including a cause of action, vests in the bankruptcy estate;' therefore, 'a debtor lacks legal capacity to sue on any undisclosed claim that accrued prior to the close of the bankruptcy proceeding.'" Myers v. Costco Wholesale Corp., No. 06-CV-1612(FB)(VVP), 2007 WL 2816190, at *2 (E.D.N.Y. Sept. 26, 2007) (alterations omitted) (quoting Thruway Invs. v. O'Connell & Aronowitz, P.C., 772 N.Y.S.2d 716, 719-20 (N.Y. App. Div. 2004)); see also Ibok v. SIAC-Sector Inc., No. 05 Civ. 6584(GBD)(GWG), 2011 WL 293757, at *6 (S.D.N.Y. Feb. 2, 2011) ("[M]any courts in this circuit have applied judicial estoppel in the bankruptcy context to dismiss undisclosed claims") (collecting cases); Coffaro v. Crespo, 721 F. Supp. 2d 141, 145-48 (E.D.N.Y. 2010) (granting summary judgment against debtor who did not disclose asset based on judicial estoppel or, in the alternative, debtor's lack of standing to bring the claim). "The rationale for these decisions is that the integrity of the bankruptcy system depends on the full and honest disclosure by debtors of all of their assets." Rosenshein v. Kleban, 918 F. Supp. 98, 104 (S.D.N.Y. 1996).

Indeed, this rule exists to prevent precisely the type of case plaintiff brings. Plaintiff cannot be relieved of its debt in bankruptcy and retain the right to sue for reimbursement on that same debt. "The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." Rosenshein, 918 F. Supp. at 104. Any other result "would reward [plaintiff] for what appears to be duplicitous conduct in the course of its bankruptcy proceeding"

and "make a mockery of the judicial system." Ibok, 2011 WL 293757, at *6 (alteration in original) (first quoting Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 325 (3d Cir. 2003), then quoting Robinson v. Tyson Foods, 595 F.3d 1269, 1276 (11th Cir. 2010)).

Any claim Coney Island had against Domino's accrued at the latest by May 8, 2013, the date Madison became the owner of the Property and took over the Lease. See Stipulated Order. It is undisputed that Coney Island was discharged from bankruptcy after these claims accrued, on August 22, 2014. Order Dismissing Chapter 11 Case, Kendric Decl. Ex. N, ECF No. 39-15. Nor did plaintiff "list this action [or the underlying debt owed to it] as an asset in the bankruptcy proceedings; 'having failed to do so, [it] lacks the capacity to sue in the present action.'" Myers, 2007 WL 2816190, at *2 (alterations omitted) (quoting Coogan v. Ed's Bargain Buggy Corp., 719 N.Y.S.2d 260, 261 (N.Y. App. Div. 2001)); see Kendric Decl. Ex. M, ECF No. 39-14.

Plaintiff argues that its claim against Domino's was disclosed in footnotes to "Monthly Operating Reports" filed with the bankruptcy court. See Aff. in Opp'n ("Hirsch Suppl. Aff."), ECF No. 33, ¶¶ 9-10. According to plaintiff, "[f]rom May 2013 until the conclusion of the bankruptcy case" each of these reports contained the following footnote:

> To date, the debtor has not been provided information from Madison [the lender] as regards payment of outstanding real estate taxes and water and sewer charges and ECB charges pursuant to this Stipulation. The Debtor believes that the real estate taxes, water and sewer charges and ECB charges billed and/or claimed liens were paid in full by Madison as agreed.

Id. ¶10; see also Monthly Operating Reports, Hirsch Suppl. Aff. Ex. C, ECF Nos. 33-5, 33-6, 33-7.

This disclosure was not sufficient; to preserve its cause of action, plaintiff needed to list it "in the schedule of assets filed with the bankruptcy court." Goldstein v. St. John's Episcopal Hosp., 701 N.Y.S.2d 111, 113 (N.Y. App. Div. 1999). "[A]ctual knowledge" by the bankruptcy court of a potential cause of action is "no substitute" for failing to list the cause of action on the asset schedule. Bromley v. Fleet Bank, 659 N.Y.S.2d 83, 84-85 (N.Y. App. Div. 1997) (alteration in original) (quoting Donaldson, Lufkin & Jenrette Sec. Corp. v. Mathiasen, 615 N.Y.S.2d 384, 386 (N.Y. App. Div. 1994)).

**B. Plaintiff Was Not Damaged**

Even assuming Coney Island has capacity to sue, summary judgment is granted against it because the undisputed facts establish that plaintiff cannot prove one element of breach of contract: damages. [4] See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (listing the elements of a breach of contract claim in New York (citing Tagare v. Nynex Network Sys. Co., 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996))); see also Greenberg v. Greenberg, 646 F. App'x 31, 32 (2d Cir. 2016). In other words, no reasonable juror could find that Coney Island was damaged by Domino's alleged breach of the lease agreement.

A plaintiff cannot recover for a breach of contract that caused it no harm. Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 257 (S.D.N.Y. 2014) ("No Plaintiff here suffered damages and so their breach of contract claim must fail as a matter of law."); Smith v. NBC Universal, 524 F. Supp. 2d 315, 327 (S.D.N.Y. 2007) ("Because damages are an element of the claim, if a

---

[4] Defendant also argues that because plaintiff was not damaged, it lacks standing under Article III of the United States Constitution. See Mem. Law Supp. Def.'s Mot. Summ. J., ECF No. 26-19, at 4-6. Defendant does not cite, and I have not found, a federal court case addressing a lack of contractual damages as an issue of standing. I therefore follow the conventional approach of discussing this issue in the context of the elements of plaintiff's prima facie case.

plaintiff cannot demonstrate harm that resulted from a breach of contract, the plaintiff's claim fails as a matter of law."); see also Harsco Corp., 91 F.3d at 348 (stating that damages is an essential element of a breach of contract claim under New York law).[5]

It is undisputed that plaintiff did not pay any of the real estate taxes, sewer and water charges, or ECB fines it seeks from defendant. Def.'s 56.1 ¶ 14; Pl.'s Resp. 56.1 ¶ 14. It is also undisputed that plaintiff does not presently owe these monies to any third party. Def.'s 56.1 ¶ 16; Pl.'s Resp. Def.'s First Set Interrog., Kendric Decl. Ex. K, ECF No. 39-12, at 1. The contract clearly envisioned that defendant would either pay these fees directly to the city, provide the money for plaintiff to directly pay the city, or reimburse plaintiff if it had already done so. See Lease Art. 16; Lease Modification. That defendant will not reimburse plaintiff for fines and taxes plaintiff has not paid, and does not owe, puts plaintiff in no worse position than envisioned under the contract.

Plaintiff's position is that, before signing the stipulation with Madison resolving their bankruptcy dispute, it "extensively negotiated" the right to collect reimbursement for real estate taxes, sewer and water fees, and ECB fines actually paid by Madison. Mem. Law Supp. Pl.'s Mot. Summ. J., ECF No. 38-2, at 12. According to plaintiff, the Stipulated Order prevents Madison from suing for reimbursement of these fees, which Domino's agreed to pay under the

---

[5] Some courts have held that New York law allows contract claims to proceed even given "the complete absence of damages resulting from the breach." See McCoy Assocs. v. Nulux, Inc., 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) (collecting cases). However, these cases concern the situation where damages are so uncertain that they may not exist. See, e.g., id. (referring damages to magistrate judge for an inquest). Here, by contrast, it is certain that plaintiff was not damaged.

lease and modification. Therefore, "[i]f Defendant does not pay the monies it contracted to pay Plaintiff it will simply enrich itself." Id.[6]

But the Stipulated Order does not preserve this right of action for plaintiff. While Madison's claims against Domino's are spelled out specifically, plaintiff's claim is allegedly preserved in the general carve out providing that plaintiff may challenge past years' tax assessments. Compare Stipulated Order at 7 ("Madison shall be permitted to continue to collect any and all outstanding rents and future rents due from Domino[']s and Domino[']s is hereby directed to pay all rents which it is currently holding under such tenancy . . . to Madison on account of Domino[']s tenancy on the Property."), with id. at 8 ("[N]othing in this Stipulation . . . shall affect the Debtor's rights, claims and causes of action known or unknown, vested or unvested, against all third and/or unrelated parties (excluding Madison) . . ., including but not limited to, any and all claims/causes of action, vested or unvested, related to real estate taxes and/or tax certiorari challenges of the real estate tax assessments of the Property. . . ."). The parties to the Stipulated Order knew how to specifically delineate their rights with respect to Domino's; that they did not do so with respect to this claim is telling. As discussed, nowhere in the bankruptcy filing before the court are Coney Island's claims against Domino's explicitly stated. In addition to barring plaintiff's claim on standing grounds, see supra, this omission renders incredible plaintiff's argument that the parties negotiating the bankruptcy settlement intended to address this claim. See Donaldson, 615 N.Y.S.2d at 386 ("An asset, to be properly

---

[6] Plaintiff has not pled a separate cause of action for unjust enrichment. See generally Compl. Furthermore, "defendants may have a windfall" when a plaintiff fails to disclose the cause of action in bankruptcy; this is preferable to rewarding the "unacceptable abuse of judicial proceedings" plaintiff attempts. Ibok, 2011 WL 293757, at *6 (quoting Payless Wholesale Distribs. v. Alberto Culver, Inc., 989 F.2d 570, 571 (1st Cir. 1993)).

scheduled, must not be described in merely vague terms."); Rosenshein, 918 F. Supp. at 104 ("[C]reditors . . . plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements. . . .").

Finally, it would be strange indeed if the Stipulated Order governed the dispute between Coney Island and Domino's. Domino's was neither a party to the bankruptcy, nor a signatory of the Stipulated Order. See Stipulated Order at 9. According to Domino's, it had no knowledge of the Stipulated Order until after it was "So Ordered" by the bankruptcy judge. Def.'s 56.1 ¶ 9. Coney Island cannot establish that it is entitled to damages from Domino's under their existing lease simply because it executed a new contract with Madison, a third party. Coney Island may reserve all the rights it wishes; this doesn't confer on it rights that do not otherwise exist.[7]

## CONCLUSION

For the preceding reasons, plaintiff's motion for summary judgment is denied and defendant's motion is granted. The Clerk is respectfully requested to close the case and enter judgment that plaintiff take nothing of defendant.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated: January 18, 2017
       Brooklyn, New York

---

[7] Defendant also argues that plaintiff did not perform its obligations under the contract and is therefore ineligible to recover from defendant even assuming Coney Island has standing and was damaged. See Mem. Law Supp. Def.'s Mot. for Summ. J., ECF No. 26-19, at 9-10. In light of the foregoing analysis, I do not reach this argument.